GARRISON, Judge.
This is an appeal from a judgment of the district court reviewing a decision of the La. Board of Embalmers and Funeral Directors. The decision of the Board provided as follows:
“FINDINGS OF FACT AND DECISION OF THE BOARD
This matter came before the Louisiana State Board of Embalmers and Funeral Directors on the 25th day of September, 1984.
After considering the law, the evidence, the stipulations of the parties, the exhibits, the memorandums submitted by counsel and the entire record of these proceedings, the Board finds the following:
‘That Centuries Memorial Funeral Home, Inc. is a corporation doing business within the state of Louisiana and as such is subject to the jurisdiction of this Honorable Board;
That Affiliated Enterprises, Inc. is a corporation doing business within the state of Louisiana and as such is subject to the jurisdiction of this Honorable Board;
That Centuries Memorial Park Cemetery, Inc. is a corporation doing business within the state of Louisiana and as such is subject to the jurisdiction of this Honorable Board;
That Hill Crest Memorial Park Cemetery, Inc. is a corporation doing business within the state of Louisiana and as such is subject to the jurisdiction of this Honorable Board;
That Centuries Memorial Funeral Home, Inc. of Shreveport was charged by subpoena on June 7,1984 and Affiliated Enterprises, Inc., Centuries Memorial Park Cemetery, Inc. and Hill Crest Memorial Park Cemetery, Inc. were charged by amendment to the complaint on the morning of September 25, 1984 with the consent of their counsel to the following violations:
That Centuries Memorial Funeral Home, Inc. and Affiliated Enterprises, Inc. and its subsidiaries, Centuries Memorial Park Cemetery, Inc., and Hill Crest Memorial Park Cemetery, Inc. have allegedly violated the provisions of L.R.S. 37:861 with regard to the sale of the Perpetual Security Vault on a pre need [sic] basis;
That Affiliated Enterprises, Inc., Centuries Memorial Park Cemetery, Inc., and Hill Crest Memorial Park Cemetery, Inc. have allegedly violated the provisions of L.R.S. 37:848(A). in that they are not certified and registered under the provisions of Chapter X to conduct the business of funeral directing;
That Centuries Memorial Funeral Home, Inc. of Shreveport has allegedly violated *126 the provisions of L.R.S. 37:846(A).(11) in that unlicensed individuals or firms were performing the work of actual funeral directing;
That Centuries Memorial Funeral Home, Inc. of Shreveport appeared before this Board as a result of notice. That Affiliated Enterprises, Inc., Centuries Memorial Park Cemetery, Inc. and Hill Crest Memorial Park Cemetery, Inc. appeared before this Honorable Board as a result of the amended complaint without opposition and with the consent of their counsel of record.
That the Exception To Jurisdiction filed on behalf of respondents to the complaint is denied and accordingly dismissed in that the Board is operating under the powers conferred through L.R.S. 37:831, et seq.;
That the Motion For Trial By Jury filed on behalf of the respondents is denied as the provisions of L.R.S. 37:831, et seq., provide this Board with the power to make a determination of the penalties and/or sanctions to be imposed upon the individual or individuals who violate the provisions of the statute;
That the Exceptions To Proceedings filed on behalf of the respondents is [sic] denied and accordingly dismissed as the record of these proceedings reflect that there was ample notice of the charges provided to the respondents and that on the date of the hearing there was no opposition to the amendment to the complaint to include other respondents who voluntarily appeared before this Board as a result of these stipulations and amendments;
That the Motion To Recuse filed on behalf of the respondents is denied as the provisions of L.R.S. 37:831, et seq., provide that this Board has the power to conduct hearings into alleged violations by others;
That the unit described in these proceedings as the PSV unit is a casket in that it is a ‘container constructed of manufactured materials such as plastic or fiberglass, in which a dead body is placed for religious services or other rights or ceremonies, for transportation, or for disposition.’ (Emphasis added) As the PSV unit is a casket it is, therefore, funeral merchandise and, therefore, under the jurisdiction of this Honorable Board;
That evidence contained within the record of these proceedings reflects that Affiliated Enterprises, Inc. and its subsidiaries, Centuries Memorial Park Cemetery, Inc., and Hill Crest Memorial Park Cemetery, Inc. have violated the provisions of L.R.S. 37:861 in that they have engaged in the sale of the PSV unit (a casket) on a pre need [sic] basis.”
ACCORDINGLY, IT IS ORDERED by the BOARD THAT:
Affiliated Enterprises, Inc. and its subsidiaries, Centuries Memorial Park Cemetery, Inc. and Hill Crest Memorial Park Cemetery, Inc. shall, within 90 days of the receipt of these Findings of Fact and Decision of the Board, deposit all of the pre need [sic] funds collected in connection with the sale of the PSV units into a bank or savings and loan association in keeping with the requirements of the provisions of L.R.S. 37:861, said deposits to include all interest due from the date of the original sales transaction. Additionally, Affiliated Enterprises, Inc. and its subsidiaries, Centuries Memorial Park Cemetery, Inc. and Hill Crest Memorial Park Cemetery, Inc. are fined the total sum of TWENTY-FIVE HUNDRED ($2,500.00) DOLLARS for violating the provisions of L.R.S. 37:861, with thirty (30) days from the receipt of this Findings of Fact and Decision of the Board being granted for payment thereof.
‘That evidence contained within the record reflects that Affiliated Enterprises, Inc. and Centuries Memorial Park Cemetery, Inc. and Hill Crest Memorial Park Cemetery, Inc. have violated the provisions of L.R.S. 37:848(A). in that they are not certified and registered under the provisions of Chapter 10 to conduct the business of funeral directing.’
ACCORDINGLY, IT IS ORDERED by the BOARD that:
Affiliated Enterprises, Inc., Centuries Memorial Park Cemetery, Inc. and Hill Crest Memorial Park Cemetery, Inc. are hereby fined a total sum of TWENTY-FIVE HUNDRED ($2,500.00) DOLLARS for violating the provisions of L.R.S. *127 37:848(A)., with 30 days being granted from the receipt of these Findings of Fact and Decision of the Board for the payment of said fine.”
Affiliated Enterprises, Inc., the parent corporation and its subsidiaries, Centuries Memorial Park Cemetery, Inc. and Hillcrest Memorial Park Cemetery, Inc., then sought judicial review in the Civil District Court, Parish of Orleans, the legal domicile of the Board. The trial court judgment and written reasons therefor provide as follows:
“JUDGMENT ON PETITION FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION
The petition for Judicial Review of the administrative decision of the Louisiana State Board of Embalmers and Funeral Directors filed on behalf of Affiliated Enterprises, Inc., Centuries Memorial Park Cemetery, Inc. and Hillcrest Memorial Park Cemetery, Inc., was submitted on briefs in November, 1985.
After considering the transcript of the proceedings below, the exhibits, argument of counsel, memoranda and the law and for the written reasons assigned,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the order of the Louisiana State Board of Embalmers and Funeral Directors issued on January 25, 1985, be and the same is set aside insofar as it levied a fine of $2,500.00 against Affiliated Enterprises, Inc., Centuries Memorial Park Cemetery, Inc. and Hill-crest Memorial Park Cemetery, Inc., for violating RS 37:848A;
IT IS FURTHER ORDERED that the judgment is set aside insofar as it levied a fine of $2,500.00 against Affiliated Enterprises, Inc., Centuries Memorial Park Cemetery, Inc. and Hillcrest Memorial Park Cemetery, Inc., for violation of RS 37:861;
IT IS FURTHER ORDERED that the order issued on January 25,1985, is amended in conformity with the ‘Reasons for Judgment’ assigned herein;
Accordingly, the order of January 25, 1985, is amended to provide that Affiliated Enterprises, Inc. and its subsidiaries Centuries Memorial Park Cemetery, Inc. and Hill-crest Memorial Park Cemetery shall deposit all the pre-need funds collected in connection with the sale of the PSV units into a bank or a savings and loan association in keeping with the requirements of the provisions of RS 37:861, provided that the PSV units are intended at the time of sale to be used as the casket or as part of the casket which is to be used for religious services or other rites or ceremonies;
IT IS FURTHER ORDERED that in the event that a PSV unit is initially sold without the intent of being used as the casket or as part of the casket for religious services or other rites or ceremonies but it is later determined that it will be used as part of the casket or as the casket, then at that time there must be compliance with the provisions of RS 37:861;
IT IS FURTHER ORDERED that Affiliated Enterprises, Inc., Centuries Memorial Park Cemetery, Inc. and Hillcrest Memorial Park Cemetery, Inc., shall deposit all interest due which is attributable to the sale of the PSV unit at the time the unit is actually used as the casket or as part of the casket or the intent is apparent that it is going to [be] used as the casket or as part of the casket for religious services or other rites or ceremonies.”
“REASONS FOR JUDGMENT
The court assigns the following reasons for judgment:
This matter comes before the court on appeal under the Administrative Procedures Act from the decision of the Louisiana State Board of Embalmers and Funeral Directors issued on January 25, 1985.
The dispute arises out of the sale of fiberglass units which were originally marketed as a cemetery vault but which could also be slipped into a casket for the duration of the funeral services and then removed. The economic benefit to the family is due to the relatively inexpensive cost of the fiberglass unit as opposed to the cost of a completely finished coffin. In other words, a family could just buy the inexpensive fiberglass unit and the funeral *128 home would then insert the fiberglass unit into a coffin owned by the funeral home but permitting the family to show the body in a fully decorated coffin and then remove the fiberglass unit after the funeral services and bury the body just in the fiberglass unit.
The conflict arises from the administrative provisions governing embalming and funeral directors which is found in RS 37:831, et seq. and in particular 37:861 and on the other hand those provisions relating to cemeteries found in RS 8:1, et seq.
The Louisiana State Board of Embalmers and Funeral Directors takes the position that RS 37:831 provides for definitions which include the definition of a casket and that the PSV unit sold by the petitioners constitutes a casket under this definition. The statute defines a casket as ‘a container, usually constructed of wood, metal, or manufactured materials such as plastic or fiberglass, in which a dead body is placed for religious services or other rites or ceremonies, for transportation, or for other disposition.’ The term disposition is then defined as ‘the shipment, interment, burial, or cremation of a dead human body usually performed by other persons not licensed by the board.’
It is clear that the PSV unit does come within the definition of a casket if in fact it is used as part of the casket during the religious services or ceremonies. However, if it is sold but not intended to be used at the time of the sale as part of the casket, then it would not come within this definition.
RS 37:861A sets forth what is unlawful with respect to selling of prearranged or prepaid burial or funeral services or merchandise but exempts grave vaults when sold by a cemetery authority.
Neither 37:831 nor RS 8:1 contains the precise definition of grave vault as used in RS 37:861. However, RS 8:1 does provide for the definition of burial vault which is defined as a ‘casket container placed in a grave for the purpose of burying human remains.’
It is clear that the statutory scheme contained in RS 37:831, et seq. provides for the administration of embalming and funeral directors whereas the regulatory scheme contained in RS 8:1, et seq. provides for the regulation of cemetery businesses. Since the time these two regulatory schemes were enacted, technology has developed a fiberglass unit that can be placed directly into the ground as a burial vault but which also can be used as part of a casket during the funeral services. The question then arises as to which administrative body has jurisdiction-Louisiana Cemetery Board or the Louisiana State Board of Embalmers and Funeral Directors.
The court suggests that this is an appropriate matter for legislative revision. However, since the court is now faced with a judicial dispute with respect to this matter, the court resolves the matter by concluding that the sale of the PSV unit does not come under the jurisdiction of the Louisiana State Board of Emblamers and Funeral Directors unless and until such time as there is an intent to use the unit as the casket or part of the casket during the funeral services. At the time that decision is made (i.e., to use the PSV unit as part of the casket or as the casket), then there must be compliance with the statutory provisions of RS 37:861. However, prior to that time the cemetery need only comply with the provisions of RS 8:1 et seq.
The court sets aside the fines that were levied because the court concludes that the record fails to support the fact that the petitioners ‘knowingly’ violated the provisions of RS 37:861. The court bases this conclusion on the fact that a reading of RS 37:861 C(2) provides for the imposition of a fine on an individual or corporation provides that there is a ‘knowingly’ violation of the statutes. Since there is no knowingly violation of the statute, then there is no basis for the imposition of the fine. Moreover, there is sufficient ambiguity between the provisions relating to the embalmers and those relating to the Cemetery Board to prevent the imposition of the fine.
With respect to the constitutional arguments of petitioners, the court cites the Supreme Court decision in Benson and *129 Gold, v. Louisiana Motor Vehicle Commission, 403 So.2d 13 (1981) at page 23 for the proposition that ‘It is unnecessary to address the constitutionality of the statutes [since] it is a long standing judicial principle that courts will not consider constitutional challenges unless necessary to the resolution of a dispute.’
The court also rejects any request by petitioners for reimbursement of expenses in accordance with 49:965.1. The Statute permits recovery of expenses only where the agency acted ‘without substantial justification.’
The court finds that there was substantial justification for the board to act and therefore denies recovery of expenses.”
A “burial vault” is a container that holds a casket. R.S. 8:1(3). The common burial vault shown in the instant case is made of cement. (See: D-3 and D-5). The casket is placed inside of the cement vault and both are buried underground. Burial vaults are generally regulated by the Louisiana Cemetery Board.
A “casket” is “... a container ... in which a dead body is placed for religious services or other rites or ceremonies, for transportation, or for other disposition.” R.S. 37:831(9). Caskets are generally regulated by the Louisiana State Board of Embalmers and Funeral Directors.
R.S. 37:861 generally provides that only a licensed funeral insurance company or a licensed funeral “establishment” (home) may sell pre-arranged or pre-paid funeral services and merchandise. A specific exception is created, however, for grave vaults, grave lots, grave spaces, grave markers, monuments, tombstones, niches and mausoleums sold by a cemetery authority.
At the time that the above-cited statutes were written, the Perpetual Security Vault (hereinafter PSV) had not been developed. The PSV is an item resembling two fiberglass bathtubs, one atop the other, right sides together and cemented together at the seams. The PSV can be used as a burial vault, in that a casket can be placed inside of the PSV and both items buried as in an ordinary vault. In addition, the bottom half of the PSV may be outfitted with pillows, linens and other funeral accou-terment. It is then slid into a special casket or “casket surround” with a removable side. The PSV sits inside the casket for wakes, viewings, and services. After the services, however, the PSV slides out of the casket and is draped. The casket, which is property of the funeral home, remains at the funeral home and the body is buried solely in the PSV. This means that the purchaser need not buy a casket in addition to the PSV. A third option is that the body is placed in a draped PSV for all services. Thus the consumer has three options:
1. purchase PSV and purchase casket;
2. purchase PSV and rent casket;
3. purchase PSV.
It would appear, then, that under R.S. 37:861 both funeral homes and cemeteries can sell PSVs. Cemeteries could sell them as vaults only. Funeral homes could sell them as caskets.
Prepaid sales by funeral establishments under the auspices of the Louisiana Board of Embalmers and Funeral Directors are governed by R.S. 37:861(A)(l)(a) providing as follows:
“(a) In such case all amounts paid to or received by the seller shall be deposited within seven days in a savings and loan association or in a savings account in a bank, in this state. Such deposits shall be carried in individual accounts in the joint name of the seller and purchaser or in individual trust accounts, both for the exclusive use and benefit, including all earned interest, of the purchaser. There shall be no commingling of these accounts. The seller may withdraw the funds only at the death of the purchaser by presentation of a death certificate copy and a certified funeral statement for the amount to be withdrawn, together with other requirements of the financial institution. The purchaser may withdraw the funds by written notice to the seller, or, if he so desires, may by his own request and by written notice to the seller at any time during the life of the *130 contract, render any amount of the prepaid contract irrevocable.”
Prepaid sales by cemetery authorities under the Louisiana Cemetery Board are regulated by R.S. 8:501, 502(A) as follows:
“Section 501. Application
Except as hereinafter provided, no person or legal entity, including a cemetery authority, shall, directly or indirectly, enter into a contract for the sale of personal property or services which may be used in a cemetery in connection with the disposing or commemorating of the memory of a deceased human being, if delivery of such personal property or performance of such services is to be made at an uncertain future date, such as at death, or more than one hundred and twenty days after receipt of final payment under such contract of sale except as provided in R.S. 8:502(A). The provisions of this section shall apply to, but not be limited to, the sale for future delivery at an uncertain date or more than one hundred twenty days after receipt of final payment of burial vaults, grave liners, urns, memorials, vases, foundations, memorial bases and similar merchandise and related services commonly sold or used in cemeteries, including interment fees. However, the provisions of this section shall not apply to cemetery spaces or the right of use or interment in any cemetery space.” Section 502. Payments to trust; amounts required
A. Any cemetery authority or other entity entering into a contract for the sale of such personal property or services as described in R.S. 8:501 of this chapter, where the delivery of the property or services is to be made at an uncertain future date or more than one hundred and twenty days after receipt of final payment under such contract shall deposit into a trust fund established for that purpose fifty percent of the gross receipts, less sales taxes, from the sales of such personal property or services....”
It is apparent that this is an “over-legislated” area of the law, and thus one in which conflicts occur as a result of the many statutes involved. The trial court judge has done the best job possible in reconciling admittedly conflicting statutes. The results may be somewhat operationally awkward and inconvenient but it is the only way to reconcile the statutes.
For the reasons discussed, the judgment below is affirmed.
AFFIRMED.
HUFFT, J., pro tern., concurs in part, dissents in part.